UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Wayne Lewis,                        Case No. 18-26550-beh

                  Debtor.             Chapter 13

**DECISION AND ORDER ON DEBTOR'S MOTION TO AMEND THE COURT'S SEPTEMBER 19, 2021 AND DECEMBER 16, 2021 ORDERS**

The debtor asks the Court to amend the order confirming his most recent Chapter 13 plan—a plan with a payment period of 84 months—to allow revised payment amounts, yet he does not expressly seek a plan modification. Alternatively, he asks to extend the time to comply with a "doomsday" order requiring him to make timely plan payments.[1] To the extent the debtor's first request is the equivalent of a plan modification,[2] it does not comply with the plain language of 11 U.S.C. § 1329(c); if viewed solely as a motion for relief from a prior order, it does not meet the requirements of Civil Rule of Federal Procedure 60(b). The debtor's companion request for more time to comply with (or relief from) a "doomsday" order, however, appears to state a basis for relief, and the Court would be willing to grant the request if supported by sufficient evidence from the debtor.

---

[1] In this district, a "doomsday" order is an order that entitles one party to relief upon presentation of evidence that the other party has failed to comply with conditions imposed by the order. Doomsday orders can be imposed as part of the court's resolution of a pending motion or as part of a consensual resolution among the parties.
https://www.wieb.uscourts.gov/uniform-doomsday-procedures

[2] The debtor's brief characterizes his filings as: ". . . the current Motion, which is best understood to be the Debtor's attempt to keep the Trustee from using the enforcement mechanisms of each order rather than an attempt to modify the terms of the Debtor's Plan." ECF No. 133, at 5.

## CASE BACKGROUND

Debtor Wayne Lewis filed his Chapter 13 bankruptcy petition, along with a Chapter 13 plan, on July 3, 2018. *See* ECF Nos. 1 and 2. The road to plan confirmation was not easy. Over the next 18 months, the Chapter 13 trustee (and one creditor) filed numerous objections to confirmation. *See* ECF Nos. 22, 30, 44, 52, 62, and 65. The debtor responded with successive amendments to his Chapter 13 plan. *See* ECF Nos. 23, 35, 45, 53, 64, and 67. Finally, in December 2019, the Court confirmed the debtor's Chapter 13 plan, which required him to make monthly plan payments of $748 to the Chapter 13 trustee for 60 months. ECF No. 79.[3]

Almost a year later, in October 2020, the trustee filed a motion to dismiss the case based on the debtor's failure to (1) make plan payments, (2) provide for plan completion within sixty months, and (3) provide the trustee with copies of his post-petition tax returns. ECF No. 83. In response, the debtor explained that he lost his job, was unable to work due to a disability, and had begun the process of applying for social security disability benefits. ECF No. 90. He asserted that he had adjusted his finances and could resume making plan payments and asked that the motion be denied. *Id.* The parties settled the motion with an agreement that the debtor file a modified feasible plan by November 30, 2020. *See* ECF Nos. 91, 93, and 94.

On the November 30 deadline, the debtor filed a motion to modify his confirmed Chapter 13 plan. ECF No. 96. Among other things, the debtor proposed to extend his plan term from 60 months to 84 months, invoking then-existing Code provision 11 U.S.C. § 1329(d), which was added by the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. 116-136, 134 Stat. 281 (March 27, 2020), and extended the applicable commitment

---

[3] At the time of confirmation, the debtor's income consisted of salary from his employment, family support payments, and food stamps. *See* ECF No. 34, at 2.

period for qualifying debtors from five years to seven years.[4] The debtor also proposed to make a lower plan payment of $50 per month through June 2021, and payments of $600 per month starting in July 2021, explaining:

> Debtor lost his employment due to health issues. He was unable to find new employment because of the COVID 19 pandemic. He applied for social security disability and is now awaiting a decision on his appeal of the social security administ[ra]tion's denial of his claim. He anticipates that his appeal will be decided within the next 6 months. The Debtor shall file a new budget prior to June 30, 2021 substantiating his ability to make the increased plan payment.

ECF No. 96, at 2. The Court confirmed the modified plan on January 11, 2021. ECF No. 101.

But the debtor's difficulties continued. In August 2021, the trustee filed another motion to dismiss, again based on the debtor's failure to (1) make plan payments and (2) provide copies of his post-petition tax returns. ECF No. 104. The debtor responded that he had fallen behind on payments because he was "in between jobs" but again asserted that he had adjusted his finances and could resume making plan payments and asked that the motion be denied. ECF No. 106. The parties once more settled the trustee's motion, this time with an agreement that the debtor be required to make timely plan payments of $600 per month ("or such other amount as specified under the terms of any subsequent Chapter 13 plan confirmed by th[e] Court") from October 2021 through June 2022, and file a modified feasible plan by October 22, 2021. *See*

---

[4] As of the date of the proposed modification, section 1329(d) provided:

(1) Subject to paragraph (3), for a plan confirmed prior to [March 27, 2020], the plan may be modified upon the request of the debtor if--

(A) the debtor is experiencing or has experienced a material financial hardship due, directly or indirectly, to the coronavirus disease 2019 (COVID-19) pandemic; and

(B) the modification is approved after notice and a hearing.

(2) A plan modified under paragraph (1) may not provide for payments over a period that expires more than 7 years after the time that the first payment under the original confirmed plan was due.

(3) Sections 1322(a), 1322(b), 1323(c), and the requirements of section 1325(a) shall apply to any modification under paragraph (1).

ECF Nos. 107, 108. The Court approved the parties' agreement in an order dated September 19, 2021. ECF No. 109.

The debtor complied with that order by filing another modified Chapter 13 plan on October 22. ECF No. 111. In this iteration, the debtor proposed plan payments of $50 per month through October 2021, $200 per month from November 2021 through April 2022, and $730 per month thereafter for the remainder of the plan. *Id.* at 2. The debtor's counsel further explained that the debtor was "currently in an appeal process for social security and VA disability [benefits]" and that within 30 days of receiving disability pay, he would "amend his budget as well as his plan if necessary." *Id.* The Court confirmed the modified plan on December 16, 2021. ECF No. 121.

March 27, 2022 was the sunset date for 11 U.S.C. § 1329(d).

On May 18, 2022, the trustee filed a certification asserting that the debtor had defaulted under the Court's September 19, 2021 order by missing his April plan payment and requested that the Court dismiss the case. ECF No. 124. Citing Federal Rule of Bankruptcy Procedure 9006(b)(1), the debtor responded by filing the present motion to amend both the Court's September 19, 2021 order (which denied the trustee's motion to dismiss, conditioned on timely "doomsday" plan payments) *and* the Court's December 16, 2021 order (which confirmed the debtor's modified plan). His combined motion asks the Court to (1) forgive the debtor's failure to make his April 2022 plan payment on time, and (2) allow him to make monthly plan payments of $50 from May through July (rather than the $730 required by the confirmed plan), with monthly payments of $730 to commence in August 2022. ECF No. 126. He described a delay in his social security benefits appeal process as constituting excusable neglect under Rule 9006(b)(1). After a hearing to consider the effect of the expiration of § 1329(d) and operation of § 1329(c) on the debtor's proposals, the debtor and the Chapter 13 trustee submitted briefing. *See* ECF Nos. 131, 133, and 134.

# DISCUSSION

The debtor has made several, not entirely consistent, arguments in support of his requests. For example, while Mr. Lewis contends that his dual motions are an effort to prevent the Chapter 13 trustee from "using the enforcement mechanisms of each order rather than an attempt to modify the terms of the Debtor's Plan," ECF No. 133, at 5, he also concedes that he cannot ask the Court to "waive" his April payment without also modifying his plan (or curing the missed payments). And in his post-hearing brief, the debtor no longer relies on Bankruptcy Rule 9006(b)(1) (enlargement of time). Instead, he argues that the relief he requests is warranted under two alternate bases: 11 U.S.C. § 1329, or Federal Rule of Bankruptcy Procedure 9024 (incorporating Federal Rule of Civil Procedure 60(b) (relief from judgment or order)).[5] The trustee, for his part, focuses his briefing solely on the debtor's ability to modify his plan under 11 U.S.C. § 1329 (to change the amount of plan payments while maintaining the plan's 84-month duration). The Court's decision primarily addresses the parties' post-hearing arguments, under § 1329 and Bankruptcy Rule 9024.

**A.   The debtor's request, if viewed as a plan modification, does not comply with 11 U.S.C. § 1329.**

Though the debtor avoids describing his request to amend the confirmation order as a plan modification under 11 U.S.C. § 1329, the substance of what he is asking the Court to do—forgive a plan payment default, with the necessary result of either deferring or changing the amount and timing of his plan payments—is an alteration of the contract between the debtor and his creditors, and thus a modification of his Chapter 13 plan. *See, e.g., In re Carter*, 638 B.R. 379, 396 (Bankr. N.D. Ill. 2022) ("A modification such as sought here—a plan performance forgiveness—is routine and common

---

[5] The debtor's post-hearing brief states: "Typically, when facing a default in plan payments, a debtor may use a combination of a modified plan pursuant to § 1329 or a motion pursuant to either Fed. R. Bankr. P. 9006(b)(1) or Fed. R. Bankr. P. 9024 to adjust the deadlines by which payments must be made or the amounts that the plan payments must be . . . ."

should the conditions be met. The court easily considers a number of such requests every week."). The type of modification the debtor seeks also appears to fall within the scope of permissible modifications under 11 U.S.C. § 1329(a). *See* § 1329(a)(1) (a plan may be modified to "increase or reduce the amount of payments on claims of a particular class provided for by the plan").[6]

But while arguably permitted under § 1329(a), the debtor's proposal violates the temporal limitations of § 1329(c).[7] Since 1978, that subsection has read:

> A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, *but the court may not approve a period that expires after five years after such time.*

11 U.S.C. § 1329(c) (emphasis added). The maximum plan period provided by § 1329(c) was expanded between 2020 and 2022 by 11 U.S.C. § 1329(d)(2). The

---

[6] The *Carter* court clarified that not all modifications designed to forgive a plan default will fit within the limitations of 11 U.S.C. § 1329(a), noting that "[b]ankruptcy courts routinely grant modifications that forgive or defer defaults, modifications that do not appear to be expressly within sections 1329(a)(1)-(4)," contrasting *In re Scott*, Case No. 14B-81270, 2017 WL 3835801 (Bankr. N.D. Ill. Aug. 31, 2017), and *In re Young*, 370 B.R. 799 (Bankr. E.D. Wis. 2007). In *Scott,* the debtors sought to modify their confirmed plan to increase the monthly plan payments and to "defer" payment of their current arrearage beyond the initial term of their plan, which the bankruptcy court found to be a proposal of the type permitted under subsections (a)(1) and (2). *See* 2017 WL 3835801, at *3. In *Young*, the debtors sought to modify their plan to forgive their prior defaults in failing to pay over one-half of their tax refunds to the trustee under their plan. The bankruptcy court found the request to be impermissible under § 1329(a), concluding: "Forgiveness of prior plan defaults is not among these allowable reasons for modification." 370 B.R. at 803.

[7] The Chapter 13 trustee plainly views Mr. Lewis's combined motion as the equivalent of plan modification. In that light, the trustee argues that failing to allow Lewis to modify his 84-month plan to change plan payment amounts while maintaining its extended payment period would run afoul of § 1329(a), which states: "At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon the request of the debtor . . . to . . . ." This argument is not well-taken. *See In re Nelson*, Case No. 19-24458-BEH, 2022 WL 6795096, at * 9 (Bankr. E.D. Wis. Oct. 11, 2022).

latter, temporary provision allowed qualifying debtors to modify their confirmed Chapter 13 plans to provide for payments up to two additional years:

> A plan modified under paragraph (1) may not provide for payments over a period that expires more than *7 years after the time that the first payment under the original confirmed plan was due.*

11 U.S.C. § 1329(d)(2) (emphasis added). Subsection (d) became effective on March 27, 2020, shortly after the COVID-19 outbreak took hold in this country. From the first, Congress established that this option to prolong plan-length would be available for a limited time. After one extension, the provision was stricken as of March 27, 2022.[8]

The debtor considers it "unclear how to deal with a plan default" for a debtor like him who obtained a CARES Act extension of his plan period and now wants to modify another aspect of his plan (like the amount of monthly plan payments) while retaining the extended payment period. He relies on a Colorado bankruptcy case, *In re Mercer,* 640 B.R. 577 (Bankr. D. Colo. 2022), for support that he may modify his plan in such a way. In *Mercer,* the bankruptcy court allowed debtors who had previously modified their plan to provide for payments over a period of seven years under section 1329(d) to further modify their plan to adjust the payment amount to creditors, while keeping the plan duration at seven years despite the sunset of § 1329(d). The court explained: "It is this Court's view that any plan extension beyond five years that this Court approved before the sunset date should remain in effect despite a subsequent modification to the plan after the sunset date." 640 B.R. at 581. The *Mercer* court supplied no analysis for its view. Nonetheless, debtor Lewis suggests that the *Mercer* conclusion comports with the narrow statutory scope of plan modifications. ECF No. 133, at 4. He points out that a plan

---

[8] Subsection (d) was added by the CARES Act on March 27, 2020 to permit extension of a plan up to a total of seven years for debtors experiencing a material financial hardship due to COVID-19 and applied to any case for which a Chapter 13 plan had been confirmed before the enactment date. Congress originally enacted a one-year sunset for this subsection, *see* Pub. L. No. 116-136, §§ 1113(b)(2)(A)(iii) and 1113(b)(2)(B), but then delayed the sunset until March 27, 2022. *See COVID-19 Bankruptcy Relief Extension Act of 2021*, Pub. L. No. 117-5, 135 Stat 249 (Mar. 27, 2021).

modification seeks to change only discrete features of a plan, and consequently argues that if a proposed modification changes a term *other than* a previously extended payment period, that extended period should remain unaffected and enforceable and the newly modified plan confirmable. *Id.*

The Court rejects this argument for the same reasons it did so in *In re Nelson*, Case No. 19-24458-BEH, 2022 WL 6795096, at *4–5 (Bankr. E.D. Wis. Oct. 11, 2022) (relying in part on *In re Sykes*, 638 B.R. 578 (Bankr. E.D. Mich. 2022), and *In re Bohinski*, 638 B.R. 870 (Bankr. E.D. Mich. 2022)).

The Court likewise concludes that the text of § 1329(c) is plain and unambiguous. Contrary to the debtor's and trustee's arguments, a plain language application of § 1329(c) to the debtor's request (albeit implicit) to modify his CARES Act plan would not be absurd, an "unintended consequence" and against congressional intent, nor result in a "manifest injustice" in the circumstances. For the sake of brevity, the Court adopts the analysis set forth in *Nelson,* 2022 WL 6795096, at * 5–9, and declines the invitation to "fix the mistake" of Congress in failing to provide that CARES Act plans need not abide by § 1329(c) for any future modifications.

**B.    Federal Rule of Civil Procedure 60(b) does not provide a basis for relief from the confirmation order.**

Taking another approach, debtor Lewis relies on the procedural posture of his case—namely, that he has not (expressly) filed a proposed plan modification—to argue that his plan need not be constrained by the 60-month limit of § 1329(c). ECF No. 133, at 5. He frames his request as seeking relief from the Court's prior confirmation order under Federal Rule of Bankruptcy Procedure 9024 (incorporating Civil Rule of Federal Procedure 60). *Id. See also In re Terrell*, 39 F.4th 888, 891 (7th Cir. 2022) ("Section 1329 and consent do not exhaust the possibilities for authorized change [to a Chapter 13 plan]. We have mentioned Civil Rule 60, which applies in bankruptcy . . . ."). Specifically, the debtor asserts that relief is warranted under either Rule 60(b)(1) (allowing a court to grant a party relief from a "final judgment, order, or proceeding" for

"mistake, inadvertence, surprise, or excusable neglect") or 60(b)(6) (allowing relief from a final judgment or order for "any other reason that justifies relief").

As for excusable neglect, the debtor explains:

> Here, the Debtor believed that he would be awarded social security disability benefits that would have allowed him to make the larger required payment. He held out hope that he would receive an answer to his appeal for longer than he should have and, when it became apparent that he would not be able to send in the April payment, he contacted his counsel to file the motion at issue.

ECF No. 133, at 5.

Excusable neglect is an equitable determination arrived at by weighing all relevant circumstances surrounding the failure to act, including the danger of prejudice to other parties, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Here, the debtor has not submitted an affidavit describing his benefits appeal. His counsel represents that Mr. Lewis had hoped the social security appeal would be successful and would supply funds to allow him to make his required plan payments and in a timely manner. Timing of the benefits determination certainly is something out of this debtor's control, but "hope" has to be realistic when faced with bankruptcy plan obligations. There are "millions of applicants for Social Security benefits each year," *see Arthur F. v. Comm'r of Soc. Sec.*, Case No. 1:19-cv-1187, 2021 WL 950634, at *4 n.5 (C.D. Ill. March 12, 2021) (internal quotation marks omitted), making the estimate of when an appeal determination might issue approximate at best. Moreover, the debtor's extended history of missing and delaying payments tilts against a finding of excusable neglect. Mr. Lewis filed this case one month after his last bankruptcy case was dismissed for failure to make payments. He amended his plan multiple times before achieving confirmation 17 months after he filed his case. ECF No. 79. The Chapter 13 trustee filed a motion to dismiss for lack of

payment in October 2020, and the debtor responded that he had lost his job, was unable to return to work due to disabilities, and had applied for social security disability. ECF Nos. 83, 90. The second motion to dismiss for lack of payment was filed in August 2021, to which the debtor responded that he was in between jobs. ECF Nos. 104, 106. His amended budget filed shortly thereafter described him as unemployed and disabled, with the bulk of his monthly income from family support and food stamps. ECF No. 115. Resolution of the motion to dismiss required him to pay $600 monthly or other amount in a subsequently confirmed plan. The trustee filed a certification of default in May 2022 because the debtor failed to make his April 2022 plan payment. ECF No. 124. This sequence of events does not demonstrate the required "excusable neglect" necessary to warrant relief from a final order, such as the confirmation order, under Rule 60(b)(1).

The debtor next asserts that relief is warranted under Rule 60(b)(6) based on the "unintended consequence" of the sunset of section 1329(d):

> [Congress' decision] to simply repeal § 1329(d) without any clarification for how those modified plans are to interact with § 1329(c) if they need to be modified again is best understood as an unintended consequence and not a deliberate decision by Congress. This provides a strong basis for the sort of extraordinary circumstances needed to prevail on a motion based on Fed. R. Civ. P. 60(b)(6).

ECF. No. 133, at 6.

Relief under any part of Rule 60(b) is "an extraordinary remedy . . . granted only in exceptional circumstances." *Dolin v. GlaxoSmithKline LLC*, 951 F.3d 882, 886 (7th Cir. 2020) (internal quotation marks omitted). "And relief under Rule 60(b)(6) in particular—the catchall provision—is even more extraordinary." *In re Rees*, 817 F. App'x 258, 261 (7th Cir. 2020) (citing *In re Neuberg v. Michael Reese Hosp. Found.*, 123 F.3d 951, 955 (7th Cir. 1997) (calling Rule 60(b)(6) an "even more highly circumscribed exception in [a] rule already limited to exceptional circumstances")). A decision under Rule 60(b) is

a matter of the court's discretion. *Del Carmen v. Emerson Elec. Co.*, 908 F.2d 158, 161 (7th Cir. 1990).

A court would be hard-pressed to conclude that consequences of a legislated sunset, advertised one to two years in advance, is an extraordinary circumstance. Rule 60(b) authorizes a collateral attack on a final judgment, which means a "modification of the judgment 'in light of factual information that comes to light only after the judgment, and could not have been learned earlier.'" *In re Cashion*, Case No. 21 B 8085, 2022 WL 1180103, at *2 (Bankr. N. D. Ill. April 21, 2022). Subsequent legislative inaction, or "inadvertence" is not "factual information" warranting Rule 60(b)(6) relief.

A somewhat analogous circumstance might be a change in case law. Some courts have held that a change in decisional law is insufficient to constitute an extraordinary circumstance as might merit relief from judgment under Rule 60(b)(6), while a change in decisional law plus some other special circumstance may qualify. *See, e.g., In re Willoughby*, 324 B.R. 66, 74–75 (Bankr. S.D. Ind. 2005) (accepting reversal of a Seventh Circuit ruling by United States Supreme Court as "cause" for reconsideration under Rule 60(b)(5) and 11 U.S.C. § 502(j) of interest component on allowed claim and noting inequity of giving court's order continued prospective effect); *see also Kemp v. United States*, 142 S. Ct. 1856, 1865 (2022) (Sotomayor, J., concurring) (suggesting that a legal error might warrant relief under Rule 60(b)(6), if a change of law has produced "extraordinary circumstances"). Changes in decisional law may or may not be anticipated, in contrast to the announced sunset of a temporary extension window like § 1329(d). But even accepting the analogy, here the ongoing operation of § 1329(c) combined with a historical failure to make payments, in part due to lack of hoped-for income, do not add up to extraordinary circumstances.

**C.      Any request to cure a default is premature.**

Next, debtor Lewis suggests that his request to extend compliance time under the confirmation order is akin to requests by debtors who seek a

reasonable time after completion of their plan term to cure payment defaults, citing *Germeraad v. Powers,* 826 F.3d 962, 968 (7th Cir. 2016). Nonetheless, Lewis acknowledges that the 24 additional months he would need to complete payment under his plan likely fall outside the realm of reasonableness envisioned by the *Germeraad* court. ECF No. 133, at 4–5. There is no affidavit from the debtor in support of a "reasonable time to cure" request, only counsel's argument about the delay in a social security benefits determination appeal. Whether considered unripe or undeveloped, the Court need not address this argument.

**D. Relief from the confirmation order is not warranted under 11 U.S.C. § 105(a).**

In passing, the debtor suggests that the Court should rely on its inherent powers under 11 U.S.C. § 105(a) to grant the requested relief. *See* ECF No. 133, at 6 (regarding the expiration of § 1329(d) without additional legislative guidance as constituting an extraordinary circumstance warranting relief under Fed. R. Civ. P. 60(b)(1) or (6), and adding: "Further, the Court's inherent powers under § 105(a) give the Court wide latitude to fashion equitable solutions like the one requested here."). Under section 105(a), a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Seventh Circuit "has generated repeated cautions to trial courts against reliance upon [section 105(a)] unless there is a gap in statutory coverage." *In re Cordova,* 635 B.R. 321, 344 (Bankr. N.D. Ill. 2021) (citing *Kovacs v. United States,* 614 F.3d 666, 674 (7th Cir. 2010)). Here, there is no gap in statutory coverage, because plan modifications are governed by section 1329. *Compare Carter,* 638 B.R. at 400 ("[I]f the Debtor were actually seeking a Plan modification here, the court would be hardpressed to use section 105.").

Even if section 105(a) *might* apply in these circumstances, for all the reasons explained above, the Court finds that the equities do not demand the result sought by the debtor. *Compare id.* at 400–01 (concluding that (1) section 105 "might still apply" because (a) the relief sought by the debtor—forgiveness

of a default—"is not in actuality a modification, but a remedy," and (b) the provision under which the debtor defaulted—provision of tax returns/refunds—was not part of the plan itself, but the confirmation order; and (2) forgiveness of the debtor's nonperformance under the confirmation order was warranted because the debtor had demonstrated "a set of circumstances unique to this case that equitably demands it").

### E. Rule 60(b) does not apply to the Court's September 19, 2021 "doomsday" order.

In his combined motion, the debtor originally described his request as one seeking to enlarge the time to comply with the court's September 19, 2021 doomsday order, citing Federal Rule of Bankruptcy Procedure 9006(b)(1). In his post-hearing brief, however, he reframes the issue as one falling under Bankruptcy Rule 9024. *See* ECF No. 133, at 5 ("While the Motion references Fed. R. Bankr. P. 9006(b)(1) as its basis, it would have been better brought pursuant to Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(b)(1) or (6). Rather than seeking additional time to comply with the Doomsday Order, it seeks relief from the Doomsday Order. Specifically, it seeks that the Debtor be deemed to be in compliance with the Doomsday Order if his plan payment in April 2022 is $0.00 and if his plan payments from April 2022 through July 2022 are $50.00 each month.").

But Rule 9024 does not apply here. Because the September 19 order is an interlocutory, and not a final, order, reconsideration is a matter left to the Court's discretion. *See, e.g., Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015) ("[Rule 60(b)] does not limit a district court's discretion to reconsider 'an interlocutory judgment or order at any time prior to final judgment.'"); *State Farm Fire & Cas. Co. v. Nokes*, 263 F.R.D. 518, 526 (N.D. Ind. 2009) ("[R]econsideration of an interlocutory order . . . is a matter of a district court's inherent power and is committed to a court's sound discretion."); *Solis v. Current Dev. Corp.*, 557 F.3d 772, 780 (7th Cir. 2009) ("The [district] court does

have broad discretion to revisit its interlocutory orders . . . .") (citing *Santamarina v. Sears, Roebuck & Co.,* 466 F.3d 570, 571 (7th Cir. 2006)).

Generally, a court will find justification for reconsidering or amending its prior order "if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous," *Santamarina,* 466 F.3d at 572, or where there is "a significant change in the law or facts since the parties presented the issue to the court." *United States v. Ligas,* 549 F.3d 497, 501 (7th Cir. 2008). *See also Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995) ("A judge may reexamine his earlier ruling . . . if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefited from it.") (citing *Arizona v. California,* 460 U.S. 605, 618 n. 8 (1983)).

No party has argued that the Court's September 19, 2021 order was "clearly erroneous." But the debtor now contends that the factual underpinning—expected prompt receipt of social security funds—was wrong. In addition, the party entitled to enforce the doomsday order—the Chapter 13 trustee—has not objected to the request, and instead supports the debtor's position. Consequently, the Court cannot find that rescinding or amending the order would "cause undue harm to the party that had benefited from it." This, coupled with the debtor's reliance on the wrong standard of review, militates against denying the motion. Instead, the Court will allow the debtor to file a supporting affidavit to convince the Court that "compelling reasons" warrant the requested relief.

The debtor's attorney laid forth the simple chronology of his benefits appeal in his initial motion, explaining:

> Debtor is in his appeals process for his social security disability benefits. Debtor had a hearing on the matter in January 2022 and was told it could take up to 7 months to receive a decision. The Debtor expected that he would have the funds, either from an answer on his social security disability appeal or from some other source, to make the April payment. Unfortunately, he has not yet received an answer from the Social Security Administration and

was unable to make the $50.00 plan payment for April 2022. He hoped to make the April payment during the first several days of May – late but close enough to be counted as the April payment. When that did not happen, he contacted his lawyers, which has produced this motion.

ECF No. 126, at 1–2. This explanation relays to the Court facts of which only the debtor has personal knowledge. To find that these facts constitute a compelling reason,[9] the Court requires evidence, in the form of an affidavit or declaration from the debtor, on which to base such a conclusion.

## CONCLUSION AND ORDER

For the foregoing reasons,

IT IS HEREBY ORDERED that the debtor's request to amend the Court's December 16, 2021 confirmation order is DENIED.

IT IS FURTHER ORDERED that the Court will hold the debtor's request to amend the Court's September 19, 2021 order in abeyance. The debtor must submit an affidavit or declaration in support of his request no later than **14 days after the date of this order,** after which the Court will issue a final ruling.

Dated: October 12, 2022

By the Court:

Beth E. Hanan
United States Bankruptcy Judge

---

[9] Although "compelling" may seem to be a more stringent standard than "excusable," there is no question that the debtor faces a higher burden in seeking relief from a final, as opposed to an interlocutory, order. Relief under Rule 60(b) has been described as an "extraordinary" remedy, and the Court's determination of whether excusable neglect exists is an equitable one that necessarily includes a consideration of the nature of the order at issue, as well as the parties affected by that order. The Court's conclusion that the debtor has not demonstrated excusable neglect sufficient to warrant relief from the final confirmation order does not preclude a finding of a compelling reason to reconsider its prior, interlocutory doomsday order.